IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PARAGON OFFICE SERVICES, LLC,  §
et al.,                        §
                               §
            Plaintiffs,        §
                               §  Civil Action No. 3:11-CV-2205-D
VS.                            §
                               §
UNITEDHEALTHGROUP, INC., et al., §
                               §
            Defendants.        §

MEMORANDUM OPINION
AND ORDER

In this action removed from state court based on ERISA,[1] plaintiffs' motion to remand

presents the question whether the case is removable because at least one of their state-law

claims is completely preempted. Concluding that at least plaintiffs' breach of implied

contract claim is completely preempted under ERISA, the court denies the motion to remand.

I

The following background facts are drawn from the state-court original petition

("petition") of plaintiffs Paragon Office Services, LLC ("POS"), Paragon Ambulatory

Physician Services, LLC ("PAP"), Office Surgery Support Services, LLC ("OSS"), and

Ambulatory Health Systems, LLC ("AHS"). Plaintiffs provide anesthesia services to

obstetricians and gynecologists who perform in-office surgeries such as endometrial

ablations. Their service involves two components: "(1) the service rendered by the medical

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

professional(s) (i.e., the anesthesiologist) and (2) [the] equipment used by the medical professional(s)." Pet. ¶ 12.

Plaintiffs filed this lawsuit in state court against defendants UnitedHealthGroup, Inc.,[2] UnitedHealthcare Insurance Co., Inc., United Healthcare of Texas, Inc., UnitedHealthcare Benefits of Texas, Inc., and Ingenix, Inc. (collectively, "United").  They seek payment for equipment used in rendering anesthesia services to persons whom United insured.  Plaintiffs assert state-law claims for breach of implied contract, violation of the Texas Insurance Code, fraud, theft of services, quantum meruit, unjust enrichment, tortious interference with existing contracts and prospective business relationships, and estoppel and quasi-estoppel. They seek actual and punitive damages, attorney's fees, and other relief.

It is undisputed that plaintiffs are out-of-network providers who do not have an express contractual relationship with United.[3]  Instead, at least as to their breach of implied

---

[2]UnitedHealthGroup, Inc. has been dismissed by stipulation and is no longer a party.

[3]The petition suggests that there is no express contractual relationship between the parties because plaintiffs' breach of contract claim is made under a theory of implied contract, not express contract. *See Spring E.R. LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *6 (S.D. Tex. Feb. 17, 2010) ("Here, there is no such Provider Agreement between Plaintiff and Defendants, as made abundantly clear by the fact that Plaintiff's contractual claim is one under implied contract."). Moreover, plaintiffs acknowledge that the parties "[have] no provider contract," *see* Ps. Reply 11, and the record does not evidence such an agreement, *see Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Insurance Co.*, 2006 WL 1663752, at *7 (S.D. Tex. June 13, 2006) (noting defendants' argument that healthcare provider did not have "separate or independent managed-care contract," that provider did not dispute this, and that record did not show such contract). Accordingly, it is undisputed that the parties did not enter into an express contractual relationship.

contract claim, plaintiffs contend that United has implied contracts with POS, PAP, and OSS[4] for payment of the anesthesia services and equipment based on the "parties' agreements and course of dealing." *Id.* at ¶¶ 22-23. While "in-network" services are paid according to their associated express contract, "out-of-network" services, such as the ones at issue here that are provided by POS, PAP, and OSS, are paid according to a "different fee agreement."[5] *Id.* at ¶ 22.

Plaintiffs assert that "[t]here is no dispute that [plaintiffs'] professional and equipment services are covered services," "that [United] has received money from its insureds to pay for those services," and that plaintiffs "[have] the right to receive payment for the equipment services." *Id.* at ¶¶ 15-16 (emphasis omitted). Plaintiffs aver that United "agree[d] to pay for the medical professional charges," "accept[ed] the anesthesia services on behalf of its insureds," and "initially paid [out-of-network] equipment services." *Id.* at ¶¶ 24-25. They allege that around April 2009, despite plaintiffs' compliance with United's billing requirements, United began denying payments "without explanation" on anesthesia equipment claims. *Id.* at ¶ 14.

---

[4]Plaintiffs do not specify the relationship between United and AHS.

[5]It appears that plaintiffs complain only of United's failure to reimburse equipment services provided by POS, PAP, and OSS on an out-of-network basis. *See* Pet. ¶¶ 24 ("[United] was provided with the required information and initially paid equipment services on an 'out of network' basis."), and 25 ("POS, PAP and OSS provided and billed [United] for the equipment necessary to administer the covered anesthesia services provided on an 'out-of-network' basis to [United's] insureds.").

United removed plaintiffs' lawsuit to this court based on federal question jurisdiction, contending that plaintiffs' state-law claims are completely preempted by ERISA. Plaintiffs move to remand.

## II

As the removing party, United "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, LLC*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

III

Ordinarily, "[r]emoval is not possible unless the plaintiff[s'] 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "There is an exception, however, to the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

> "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."

*Id.* at 207-08 (alterations in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Thus because plaintiffs' petition does not assert claims under federal law and because United does not contend that the court has diversity jurisdiction, United can establish removal jurisdiction only if ERISA completely preempts one or more of plaintiffs' state-law claims. *See, e.g., Westfall v. Bevan*, 2009 WL 111577, at *2 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.).

Complete preemption is available under ERISA § 502, the statute's civil-enforcement provision, which "Congress intended to be the exclusive vehicle for suits by a beneficiary to recover benefits from a covered plan." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990); *see also, e.g., Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("Congress has clearly manifested an intent to make causes of action within the scope

of the civil enforcement provisions of § 502(a) removable to federal court."). "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (quoting *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)). In particular, § 502(a)(1)(B) preempts all suits involving ERISA-governed plans "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A cause of action falls within the scope of § 502(a)(1)(B), and is therefore completely pre-empted, if (1) the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also, e.g., Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, 2006 WL 1663752, at *7 (S.D. Tex. June 13, 2006) ("Complete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim.") (citing *Davila*, 542 U.S. at 210). "To determine whether [plaintiffs'] causes of action fall 'within the scope' of ERISA § 502(a)(1)(B), we must examine [plaintiffs'] complaint[], the statute on which their claims are based . . . , and the various plan documents." *Davila*, 542 U.S. at 211. "[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S.

- 6 -

1, 22 (1983).

"A state-law claim that is completely preempted under § 502 is transformed into a new federal claim." *Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, at *4 (N.D. Tex. Oct. 7, 2009) (Fitzwater, C.J.). In other words, complete preemption "eliminates the state-law claim" and "replaces [it] with a federal claim." *Id.* "'Because they are recast as federal claims,' state-law claims that are completely preempted provide a basis for removal." *Westfall*, 2009 WL 111577, at *3 (quoting *McLaren v. RailAmerica, Inc.*, 2001 WL 366431, at *2 (N.D. Tex. Mar. 21, 2001) (Fitzwater, J.)).[6]

## IV

The court first examines whether plaintiffs could have brought a claim under § 502(a)(1)(B).

## A

To decide whether at least one of plaintiffs' state-law claims is completely preempted,

---

[6]Another form of ERISA preemption, known as "conflict preemption," "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003) (en banc). Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are superceded] insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). Conflict preemption under § 514 "provides an affirmative federal defense to a state-law claim," *Westfall*, 2009 WL 111577, at *4 (citing *Giles*, 172 F.3d at 337), and results in dismissal, *see, e.g., Menchaca v. CNA Group Life Assurance Co.*, 331 Fed. Appx. 298, 304 (5th Cir. 2009) (per curiam) (upholding dismissal of state-law claims based on § 514 preemption). "[O]nly complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required," and therefore is not at issue in this case. *See Arana*, 338 F.3d at 440. To the extent the parties rely on cases applying conflict preemption, the court declines to give them weight.

the court must first determine whether the plans are ERISA employee welfare benefit plans. *See Meyers v. Tex. Health Res.*, 2009 WL 3756323, at *3 (N.D. Tex. Nov. 9, 2009) (Fitzwater, C.J.).  United maintains that plaintiffs submitted 1,245 claims for benefits.  It contends that at least 1,198 of the claims (i.e., 96.2% of the claims at issue) are governed by ERISA-regulated benefit plans, leaving 47 claims that are not associated with ERISA plans. Moreover, one of the plans offered in evidence as an example includes a "Statement of Employee Retirement Income Security Act of 1974 (ERISA) Rights" that states that "[a]s a participant in the plan, you are entitled to certain rights and protections under [ERISA]."  Ds. App. 153.  Plaintiffs do not dispute this; they in fact acknowledge that "[t]his lawsuit may arguably 'involve' ERISA plans."  Ps. Br. 5.  Because plaintiffs do not contest United's assertion that ERISA governs 1,198 of the claims at issue, the court concludes that ERISA applies.  *Cf. Meyers*, 2009 WL 3756323, at *4 n.8 ("In cases where there is no genuine dispute regarding ERISA's applicability, courts need not perform an in-depth analysis . . . , but can recognize that ERISA applies to the relevant plan.").

B

The court next considers whether plaintiffs have standing to sue under ERISA. According to their petition, plaintiffs are healthcare providers.  *See* Pet. ¶ 12 ("[Plaintiffs] provide[] professional, in-office anesthesia services to obstetrics/gynecologists[.]").  "By its terms, standing under ERISA is limited to participants and beneficiaries."  *Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *2 (S.D. Tex. Feb. 17, 2010) (citing *Franchise Tax Bd.*, 463 U.S. at 27).  Although a healthcare provider lacks independent standing to sue

under § 502(a)(1)(B), it is entitled to derivative standing if a participant or beneficiary has assigned to it the right of the participant or beneficiary to benefits under the plan. *See id.* (citing *Mem'l Hosp.*, 904 F.2d at 250); *see also, e.g., Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) ("[T]his Court, like many of our sister Circuits, recognizes derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans, to be brought by certain non-enumerated parties.") (collecting cases).

United has introduced evidence that plaintiffs sought and obtained assignments for 1,229 of the claims (i.e., 98.7% of the claims at issue), leaving 16 claims for which assignments were not received.  Because these 16 claims do not overlap with the 47 claims that are not governed by ERISA,[7] United asserts, in total, that plaintiffs have standing under § 502(a)(1)(B) for 1,182 claims (i.e., 94.9% of the claims at issue).  United offers in evidence a claims chart that consists of a spreadsheet that identifies and provides information for the claims that plaintiffs have submitted.  It identifies whether the rights of particular patients were assigned to plaintiffs.  United derived this assignment information from forms that plaintiffs provided United.  On the CMS-1500 form, field number 13 states "13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to

---

[7]According to the claims chart that United has provided, plaintiffs did not receive an assignment of benefits for claims 270, 667, 936, 942, 944, 947-51, 953-55, 967, 969, and 973. *See* Ds. App. 179, 185, 189-190.  United also alleges that these claims are derived from plans governed by ERISA.

the undersigned physician or supplier for services described below." *E.g.,* Ds. App. 9, 196,

200. Plaintiffs allegedly answered on hard-copy CMS-1500 submissions "SIGNATURE ON

FILE," which "acknowledge[s] that the patient . . . assigned his or her right to collect plan

benefits directly to the provider, and that Plaintiffs [have] the patient's signature on file," and

on electronic submissions, "Y/BENEFITS ASSIGNED TO PROVIDER/PAY PROVIDER."

*See, e.g., id.* at 9 and 196; *see also, e.g.,* 200. And on the electronic UB-04 form, United

contends that AHS stated "Y" next to the entry "ASSIGN BEN." *See id.* at 9, 221. Plaintiffs

do not dispute receiving assignments but instead contend that "[they] are not suing in this

case standing in the shoes of ERISA plan participants by way of assignments of benefits,"

Ps. Br. 10, and that the "benefits assignment is irrelevant." Ps. Reply 1.

　　　The court holds that United has demonstrated that plaintiffs were assignees to benefits

for 1,182 claims governed by ERISA. The evidence United presents is like the evidence

produced by the defendants in *Spring E.R.*, which was deemed sufficient to confer standing.

In *Spring E.R.* the defendants "produce[d] printouts of records from their electronic database

system reflecting claims for benefits submitted by Plaintiff" and "a copy of the UB-92 form

submitted by Plaintiff relating to one of the patients," which contained the letter "Y" for

"yes" for "Assignment of Benefits Certification Indicator." *Spring E.R.*, 2010 WL 598748,

at *3. Despite the plaintiff's contentions that it did not receive assignments of benefits from

its patients, that assignment forms were not available at its facilities, and that it erroneously

understood an answer "Y" to merely mean that it accepts assignments rather than that an

assignment had been received, the court held that the defendants had demonstrated that the

plaintiffs were assignees. *Id.* at *3-4.

## C

Having determined that plaintiffs have standing under ERISA as assignees of benefits for 1,182 claims governed by ERISA, the court holds that plaintiffs could have brought at least some of their state-law claims as a cause of action under § 502(a)(1)(B).

The instant dispute arises from United's refusal to pay for equipment used in providing anesthesia services. *See, e.g.,* Pet. ¶ 14. Plaintiffs allege as their first cause of action a breach of implied contract claim. They aver that "United . . . has implied contracts with POS, PAP, and OSS to pay for professional anesthesia services and equipment," "pursuant to the parties' agreements[8] and course of dealing," yet "refus[ed] to pay for anesthesia equipment." *See id.* at ¶¶ 22-23, 26. Some of plaintiffs' other claims, such as theft of services, quantum meruit, and unjust enrichment, similarly rely on the alleged implied agreement and acceptance. *See, e.g., id.* at ¶¶ 36 (alleging in theft of services claim that United "agree[d] to pay for" services as "confirm[ed] . . . by its words and conduct" and

---

[8]In their fraud cause of action (their third claim), plaintiffs allege that United "knowingly, intentionally, and maliciously made fraudulent representations . . . promising to pay for all of [plaintiffs'] anesthesia services, including necessary equipment," that "those representations were false when made," and that "[United] knew the representations were false." Pet. ¶ 33. But the allegations of plaintiffs' claim for breach of implied contract encompass only ¶¶ 1 through 27 of their petition. *See id.* at ¶ 21 ("[Plaintiffs] incorporate[] by reference the allegations in the preceding paragraphs as if fully set forth herein."). Therefore, the allegations of "fraudulent representations" in ¶¶ 33 and 34 are not incorporated and cannot serve as a predicate for the alleged "agreements." Thus to the extent plaintiffs are basing their implied contract claim on the alleged misrepresentations, the court declines to consider either the allegations or the opinions that plaintiffs cite in their briefing.

- 11 -

"accepted the services"); 38 (alleging in quantum meruit claim that United "received money from its insureds to pay for the services" and "accepted and agreed to pay for [plaintiffs'] services"); and 40 (alleging in unjust enrichment claim that United "accepted money from its insureds, and agreed to pay that money to those who provided anesthesia services" and "is unjustly enriched by receiving money from its insureds and then refusing to pay that money to [plaintiffs]").  Instead of asserting these state-law claims, plaintiffs could have alleged a cause of action under § 502(a)(1)(B) to recover benefits or enforce rights assigned to them due to the alleged denial of reimbursement for equipment services.  *See, e.g., Lone Star Ob/Gyn Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("[Plaintiff] clearly has standing to seek benefits under the terms of their patients' ERISA plans, as [plaintiff's] patients have assigned [plaintiff] their rights under those plans."); *Quality Infusion Care Inc. v. Humana Health Plan of Tex. Inc.*, 290 Fed. Appx. 671, 679 (5th Cir. 2008) (concluding that plaintiffs could have brought their Texas state law claim under § 502 because "[i]t is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim") (quoting *Harris Methodist Fort Worth v. Sales Support Servs., Inc. Emp. Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005)); *Spring E.R.*, 2010 WL 598748, at *4 (in holding that plaintiff could have brought its claims under ERISA due to assignment of benefits, stating that "all one needs for standing under ERISA is a colorable claim for benefits, and 'the possibility of direct payment is enough to establish subject matter jurisdiction'") (alterations omitted) (quoting *Conn. State Dental Ass'n v. Anthem Health*

*Plans, Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009)).

Accordingly, the court concludes that plaintiffs could have brought at least one state-law claim as an ERISA cause of action under § 502(a)(1)(B).

V

Finally, the court considers whether United is alleging at least one claim that is not founded on a legal duty that is "independent" of the relevant ERISA plans.

A

"A legal duty is not independent of ERISA if it 'derives entirely from the particular rights and obligations established by ERISA benefit plans.'" *Ambulatory Infusion*, 2006 WL 1663752, at *7 (quoting *Davila*, 542 U.S. at 210) (brackets omitted).  If plaintiffs are seeking assigned ERISA benefits, they are not suing on an independent basis and "must proceed under the procedures established by § 502(a)" because they "[are] seeking to enforce the terms of the plan." *Lone Star*, 579 F.3d at 529 n.3.  But if plaintiffs' claims "[a]re entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing." *Id.*  "The crucial question is whether [plaintiffs are] in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract." *Id.*

B

Plaintiffs' first cause of action is for breach of implied contract.[9]  In examining

---

[9]"The elements of a breach of contract claim are the same, whether the alleged contract is express or implied." *DAC Surgical Partners, P.A. v. United Healthcare Servs.,*

whether the claim for breach of implied contract implicates an independent legal duty, the parties refer to the distinction drawn in *Lone Star* between the *right to* payment and the *rate of* payment.[10] Although plaintiffs maintain that their claim involves the applicable *rate of* payment, the claim concerns the *right to* payment (i.e., whether the service is "covered.") *See Mem'l Hermann Hosp. Sys. v. Aetna Health Inc.*, 2011 WL 3703770, at *3 (S.D. Tex. Aug. 23, 2011).

---

*Inc.*, 2011 WL 3841946, at *5 (S.D. Tex. Aug. 30, 2011) (citing *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App. 2009, no pet.)).  To recover for breach of implied contract, plaintiffs must show the existence of a valid implied contract, performance or tender of performance by plaintiffs, a breach by United, and damage resulting from that breach.  *See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App. 2000, no pet.).  An implied contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Lection v. Dyll*, 65 S.W.3d 696, 704 (Tex. App. 2001, pet. denied) (quoting *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 569 (Tex. App. 1989, no writ)) (internal quotation marks omitted). Although plaintiffs must prove the element of mutual agreement to establish both an express and an implied contract, "the real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them." *Haws & Garrett*, 480 S.W.2d at 609 (citing cases).  The existence of an implied contract is "inferred from the circumstances." *Id.* (citing cases).

[10]In *Lone Star* the plaintiff, a healthcare provider, sued the defendant, an ERISA plan administrator, for partial payment of claims. *Lone Star*, 579 F.3d at 528.  The parties had entered into a provider agreement that prescribed the rates for which healthcare providers would be reimbursed. *Id.*  The panel concluded that it was undisputed that the services were covered and that the right to payment could be determined solely by considering the provider agreement, without interpreting an ERISA plan. *Id.* at 530.  The panel held that "[a] claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the [ERISA] benefit plan, . . . is not preempted by ERISA" because the "claims are entirely separate from coverage [under the plan] and arise out of the independent legal duty contained in the [other agreement]." *Id.* at 530-31 (emphasis in original).

In *Ambulatory Infusion* the court considered a similar breach of contract claim brought by a healthcare provider against an ERISA plan administrator and concluded that the claim involved a *right to* payment as opposed to the *rate of* payment. *Ambulatory Infusion*, 2006 WL 1663752, at *1, *8-9. According to a letter sent to the plaintiff, the defendants denied at least three of the disputed claims on the grounds that they were "duplicate charge[s]." *Id.* at *2. The court held that "[a]lthough [plaintiff] frame[d] the breach of contract claim as a claim for breach of an independent contract generated with [defendant], that claim depend[ed] on whether the charges were covered by the . . . Plan." *Id.* at *9. In particular, to resolve the claim, the court needed "to determine whether the specific services [plaintiff] provided were covered as 'eligible expenses' or not covered because the services exceeded the price of 'reasonable and customary' services or were duplicative of other invoices already submitted and paid." *Id.* at *8. It reasoned that "the dispute [was] not 'the applicable *rate* of payment'" but instead concerned coverage. *See id.* (emphasis in original).

United contends that it has "already paid the anesthesiologist and/or physician performing the procedure for the same [equipment] services for which Plaintiffs sought reimbursement." Ds. Br. 4. United offers documentary evidence[11] that it denied plaintiffs'

---

[11]Courts have considered similar documents in determining whether a claim is completely preempted under ERISA. *See, e.g., Ambulatory Infusion*, 2006 WL 1663752, at *2 (noting that "[defendant] sent [patient's] counsel a letter explaining why certain charges had been denied," including on the basis of duplicate charges); *cf. DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, 2011 WL 3841946, at *3 (S.D. Tex. Aug. 30, 2011) (in examining complete preemption, noting that defendants sent demand letters but "[l]etters did not base the refusal to pay Plaintiffs for . . . fees on any provision of any ERISA plan" but on Texas law).

equipment charges because they were duplicative.  For example, an "Explanation of Benefits" ("EOB")[12] sent to plaintiffs stated that the claim was denied because the "procedure code and modifier are the same as or equivalent to another procedure code and modifier previously submitted by another health care provider.  No further benefits are available for this service."  Ds. App. 169.  Another EOB stated that "reimbursement has been previously issued for these dates of service."  *Id.* at 170.  United also refers to denial letters sent to plaintiffs, one of which stated that the claim for reimbursement was denied because "benefits are not available under the plan" since "[t]he billed code has already been processed towards another provider for the billed DOS."  *Id.* at 159.  Considering United's evidence that the equipment claims were denied on the basis of duplicative charges, the court holds that plaintiffs' breach of implied contract bears on the *right to* payment.

C

Courts have held that "[w]hen the question is the *right [to]* payment, as opposed to the *rate of* payment, ERISA complete preemption is triggered and [plaintiffs'] motion for remand must fail."  *Mem'l Hermann*, 2011 WL 3703770, at *3 (emphasis added) (citing *Lone Star*, 579 F.3d at 530-31; *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 331 (2d Cir. 2011)); *see also Lone Star*, 579 F.3d at 531 ("[A]ny determination of benefits under the terms of a plan—i.e., what is . . . a 'Covered Service'—does fall within ERISA[.]").  It is still necessary that the right to payment *derive from an ERISA benefit plan* (as opposed to

---

[12]According to United, EOBs are routinely sent to plaintiffs and describe the amounts payable and the reasons for the determination.

another independent obligation), therefore requiring interpretation of the plan. *See Lone Star*, 579 F.3d at 530-31(after noting that provider agreement stated that defendant would pay for covered services, which are "those services recognized as 'medically necessary' under the *terms of the relevant ERISA plan*," concluding that determination regarding whether service was "covered" fell within ERISA) (emphasis added); *Quality Infusion*, 290 Fed. Appx. at 680-81 (because "the right to payments, as well as their amounts, . . . *depend upon the Plan*[,] . . . the Plan 'forms an essential part of [plaintiff's] claim[s]' and, thus, such claims are subject to complete preemption") (emphasis added and brackets omitted) (quoting *Davila*, 542 U.S. at 213); *Mem'l Hermann*, 2011 WL 3703770, at *2-3 (noting that "[s]ome if not the majority of [plaintiff's] claims . . . are based on [defendant's] refusal to pay medical claims based on *lack of coverage under certain ERISA plans*" and so ERISA applied to dispute over right to payment) (emphasis added); *Ambulatory Infusion*, 2006 WL 1663752, at *8 (holding that resolving dispute over coverage was "possible only by reference to and interpretation of the . . . ERISA Plan").  Thus although plaintiffs frame their claim in terms of a breach of an implied contract claim, it is completely preempted if the right to payment nonetheless turns on the terms of an ERISA benefit plan and not an independent obligation. *See Spring E.R.*, 2010 WL 598748, at *5 (holding that because plaintiff's claim under theory of implied contract was based on a "health insurance card presented by the patients it treated" and cards expressly referred to "'coverage terms and exclusions' under the ERISA plans," "[the] Court would necessarily refer to the ERISA plans" and, therefore, implied contract claim cannot constitute an independent obligation); *Ambulatory Infusion*, 2006 WL 1663752,

at *9 ("Although [plaintiff] frames the breach of contract claim as a claim for breach of an independent contract generated with [defendant], that claim depends on whether the charges were covered by the [ERISA] Plan.").

In their breach of implied contract claim, plaintiffs allege that their right to payment derives from "the parties' agreements and course of dealing." *See* Pet. ¶ 23. But the record shows that the out-of-network plaintiffs do not have a provider agreement with United, *and* these plaintiffs are seeking to recover plan benefits. *See, e.g., Found. Ancillary Servs., L.L.C. v. United Healthcare Ins. Co.*, 2011 WL 4944040, at *2 (S.D. Tex. Oct. 17, 2011) ("In contrast to *Lone Star*, Plaintiff and Defendants here have no provider agreement between them that would form an independent basis for recovery. Resolving this dispute is possible only by reference to and interpretation of the patients' ERISA plans, rather than any other contract."); *Spring E.R.*, 2010 WL 598748, at *6 (in holding that implied contract claim was "limited by the terms of the ERISA plan," distinguishing *Lone Star* because "the decision in that case arose from a wholly separate agreement between the insurance company and the healthcare facility" when *Spring E.R.* did not have a provider agreement). In order for the out-of-network plaintiffs to recover at all, they must do so as assignees of United plan benefits, and they must establish a right to recover under the relevant ERISA plans.[13]

---

[13]Plaintiffs do not allege that United indicated expressly or impliedly that it would cover their equipment services *regardless of the terms of the ERISA plans. See, e.g., Regency Hosp. Co. v. Ark. Blue Cross Blue Shield*, 2009 WL 5174246, at *3, *5 (E.D. Ark. Dec. 21, 2009) (holding that, because out-of-network provider did not have contractual agreement with defendant, "[defendant's] obligation was to provide benefits according to the terms of the plans at issue," and merely because provider alleged that defendant made oral promises

- 18 -

One ERISA plan that United cites as an example provides, in pertinent part:[14]

> 26. Surgery - Outpatient
>
> Surgery and related services received on an outpatient basis at a Hospital or Alternate Facility or in a Physician's office.
>
> Benefits under this section include certain scopic procedures. Examples of surgical scopic procedures include arthroscopy, laparoscopy, bronchoscopy, hysteroscopy.
>
> Benefits under this section include:
> • The facility charge and the *charge for supplies and equipment*.
> • Physician services for anesthesiologists, pathologists and radiologists. (Benefits for other Physician services are described under *Physician Fees for Surgical and Medical Services*.)

Ds. App. 69 (emphasis added). United also refers to exemplar EOBs that state that the "plan does not cover this family planning service or associated expense," *id.* at 168, and that "no further benefits are available for this service," *id.* at 169. United also relies on denial letters, one of which states that the claim for reimbursement was denied because "benefits are not available under the plan" since "[t]he billed code has already been processed towards another provider for the billed DOS." *Id.* at 159; *cf. DAC Surgical Partners, P.A. v. United*

---

about benefits "[did] not mean that the plans ha[d] no relevance"). United has introduced evidence that plaintiffs' right to coverage is dependent on the terms of the ERISA plans because the equipment charges were denied due to "the terms of the Plans." Ds. Br. 4; *see also Ambulatory Infusion*, 2006 WL 1663752, at *8 (before concluding that complete preemption applies, noting "[Defendant] denied the payments based on its administration and interpretation of the [ERISA] Plan.").

[14]*See supra* note 11; *Davila*, 542 U.S. at 211 ("To determine whether [plaintiffs'] causes of action fall 'within the scope' of ERISA § 502(a)(1)(B), we must examine [plaintiffs'] complaint[], the statute on which their claims are based . . . , and the various plan documents.").

*Healthcare Servs., Inc.*, 2011 WL 3841946, at *3 (S.D. Tex. Aug. 30, 2011) ("*DAC Surgical I*") (in holding that dispute did not rely on legal duty created by ERISA, noting that "Defendants in the Demand Letters did not base the refusal to pay Plaintiffs for the [claim] on any provision of any ERISA plan").[15]  It therefore appears that "[r]esolving this [claim] is possible only by reference to and interpretation of the patients' ERISA plans," *see, e.g., Foundation Ancillary*, 2011 WL 4944040, at *2, and that the "claim depends on whether the charges were covered by the [ERISA p]lan[s]," *Ambulatory Infusion*, 2006 WL 1663752, at *9.[16]

---

[15]As United points out, *DAC Surgical I* was later clarified in *DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, 2011 WL 5006598, at *1-2 (S.D. Tex. Oct. 20, 2011). This clarification does not alter the court's interpretation of the relevant part of *DAC Surgical I* .

[16]Even assuming that plaintiffs' claim is based on the *rate of* payment, it would nonetheless be completely preempted.  Plaintiffs allege that the rate for the services is determined by "a different fee agreement."  Pet. ¶ 22.  But, as the exemplar ERISA plan, EOBs, and denial letters indicate, this "different fee agreement" appears reliant on the governing ERISA plans. Although plaintiffs read *Lone Star* to reject complete preemption when the dispute involves a *rate of* payment, the parties in *Lone Star* had negotiated an independent provider agreement with a fee schedule separate from the ERISA plan[, a fact omitted by plaintiffs].  *See Lone Star*, 579 F.3d at 528, 530.  As a result, to resolve the disputed issue whether defendant paid the proper rate, the *Lone Star* court only needed to examine the provider agreement, not the ERISA plan.  *See id.* at 530; *see also Quality Infusion*, 290 Fed. Appx. at 680 (explaining that "[t]he opinion[ in *Lone Star*] depended chiefly upon contracts between provider and insurer, as well as applicable state law, and not any ERISA plan.").  Here, the rate of payment depends on the terms and conditions of the ERISA plans, and thus a suit disputing the rate of payment could be instituted under § 502(a) and is dependent on the ERISA plans.  *See Quality Infusion*, 290 Fed. Appx. at 680-81 (because "the right to payments, as well as their amounts, . . . depend upon the Plan[,] . . . the Plan 'forms an essential part of [plaintiff's] claim[s],' and, thus, such claims are subject to complete preemption") (quoting *Davila*, 542 U.S. at 213) (brackets in original); *Found. Ancillary Servs.*, 2011 WL 4944040, at *3 ("Any patient who was denied full benefits for the

Accordingly, the court holds that plaintiffs' breach of implied contract claim is completely preempted under ERISA § 502. *See Meyers*, 2009 WL 3756323, at *6 (in holding that plaintiff's breach of contract claim is completely preempted, noting that "[t]he Fifth Circuit has also recognized that a breach of contract claim seeking benefits due under an ERISA-governed plan is completely preempted under § 502") (citing *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 276 n.34 (5th Cir. 2004)). Therefore, the court has federal-question subject matter jurisdiction, United properly removed the case based on that jurisdiction, and plaintiffs' motion to remand must be denied. *See Giles*, 172 F.3d at 337 ("[A]ll the defendant has to do is demonstrate a substantial federal claim, *e.g.,* one completely preempted by ERISA, and the court may not remand. Once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims[.]").

\* \* \*

For the reasons explained, plaintiffs' motion to remand is denied.

**SO ORDERED.**

March 27, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

services they received could also have claimed that Defendants improperly denied payment for certain charges. . . under section § 502(a), based on their plan terms.